DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Douglas Danko, appeals his conviction out of the Medina County Court of Common Pleas. This Court affirms.
 I. {¶ 2} On January 4, 2007, Danko was indicted on one count of felonious assault in violation of R.C. 2903.11(A)(2), a felony of the second degree. A supplemental indictment was filed on January 31, 2007, adding a firearm specification in violation of R.C. 2941.145 to the felonious assault charge. Danko pled not guilty to the charges.
 {¶ 3} On March 2, 2007, Danko's attorney filed a suggestion of incompetency. The trial court referred Danko to the Akron Psycho-Diagnostic Clinic for evaluation. On May 15, 2007, the trial court issued a journal entry finding Danko competent to stand trial based on the parties' joint stipulation to the authenticity and admissibility of the Akron Psycho-Diagnostic Clinic's report which found Danko competent. *Page 2 
 {¶ 4} The matter proceeded to trial. At the conclusion of trial, the jury found Danko guilty of felonious assault and the corresponding gun specification. The trial court denied Danko's motion for release pending sentencing. The trial court sentenced Danko to four years in prison for the count of felonious assault, plus a mandatory three-year term for the gun specification, to be served consecutively. Danko timely appeals, raising two assignments of error for review.
 II. ASSIGNMENT OF ERROR I "THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT THE JURY'S VERDICT, AND [DANKO'S] FELONIOUS ASSAULT CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, WHERE THE MENS REA ELEMENT OF `KNOWINGLY' WAS NOT ESTABLISHED BEYOND A REASONABLE DOUBT."
 {¶ 5} Danko argues that his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence. Specifically, he argues that the State failed to prove that he acted with the requisite culpable mental state, i.e., that he acted knowingly. This Court disagrees.
 {¶ 6} A review of the sufficiency of the State's evidence and the manifest weight of the evidence adduced at trial are separate and legally distinct determinations. State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600. "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." Id., citing State v. Thompkins (1997),78 Ohio St.3d 380, 390 (Cook J., concurring). When reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to determine whether *Page 3 
the evidence before the trial court was sufficient to sustain a conviction. State v. Jenks (1991), 61 Ohio St.3d 259, 279.
 "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Citation omitted.) Id. at paragraph two of the syllabus.
 {¶ 7} A determination of whether a conviction is against the manifest weight of the evidence, however, does not permit this Court to view the evidence in the light most favorable to the State to determine whether the State has met its burden of persuasion. State v. Love, 9th Dist. No. 21654, 2004-Ohio-1422, at ¶ 11. Rather,
 "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
 {¶ 8} This Court has stated that "[s]ufficiency is required to take a case to the jury[.] * * * Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462.
 {¶ 9} Danko was convicted of felonious assault in violation of R.C. 2903.11(A)(2), which states, in relevant part, that "[n]o person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." R.C. 2901.22(B) states:
 "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain *Page 4 
nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 10} The victim, Robert Brookshire, testified at trial regarding the incident which occurred soon after midnight on January 1, 2007. Mr. Brookshire testified that he went to a party on December 31, 2006. He testified that he called his sister-in-law, Laura Brookshire, in an attempt to reach his brother, Laura's then-husband, at approximately 7:00 p.m. He testified that Laura was in the process of divorcing his brother.
 {¶ 11} Mr. Brookshire further testified as follows. He was not drinking that evening because he was on-call as a firefighter. He called Laura again around 9:00 p.m., and she called him back around 12:15 a.m. on January 1, 2007, asking to be picked up because "somebody had took the car keys." Mr. Brookshire drove to 162 Chatham Road, Lafayette Township, Medina County, Ohio, to pick her up from Danko's residence. Laura and Danko had gone to a party together that evening. Mr. Brookshire had met Danko two months earlier at a wedding, and there was "no bad blood" between the two.
 {¶ 12} As Mr. Brookshire was driving to Danko's residence, Laura called him again to tell him to hurry. When he arrived 8-10 minutes later, Laura was sitting in her car. She walked to Mr. Brookshire's Jeep, opened the door and placed her purse inside. Danko's garage door then "opened up." Danko was standing in his garage, holding Laura's keys. Laura approached Danko, who gave her the keys.
 {¶ 13} As Laura began walking back to the Jeep, Mr. Brookshire saw Danko grab a handgun off a workbench in the garage. He then saw that a red laser was pointed at his chest. The laser beam remained on his chest for 30-45 seconds. Mr. Brookshire got scared and told Laura to either get in his car or in hers. Laura got in her own car, and Mr. Brookshire backed out onto the road, west of Danko's residence. Danko was still in his garage, aiming the handgun at *Page 5 
Mr. Brookshire. Mr. Brookshire sat on the roadway for another 25-30 seconds, waiting for Laura to pull out of Danko's driveway. Suddenly, Mr. Brookshire heard a "big crash" and realized that his driver's side window had completely shattered. Believing that someone had busted out his window, he sped away. After driving for several minutes, he stopped and saw a bullet entry hole in the passenger side of the front windshield.
 {¶ 14} Mr. Brookshire drove to his cousin's house in Seville, where someone called the police. He gave a statement to the police, telling them that Danko had shot at him. He was certain that it was Danko who shot at him because Danko continued to aim the handgun at him the entire time he was on the road. Mr. Brookshire believed that the bullet entered his front windshield and exited through his driver's side window, shattering the glass which cut him.
 {¶ 15} Laura Brookshire testified that she accompanied Danko to a New Year's Eve party at the home of Danko's neighbors on December 31, 2006. She testified that they returned to Danko's house a little after midnight, at which time Danko went to the bathroom and started vomiting because he had been drinking all evening.
 {¶ 16} Laura testified that Robert Brookshire had contacted her a couple times that evening, and she called him after midnight to ask him to pick her up. She testified that she did not want to drive because she had been drinking. She testified that she wanted to leave and continue to have fun and that she did not want to stay with Danko and watch him vomit all night. Laura testified that she told Danko that she called Mr. Brookshire for a ride, and Danko asked her not to go. She admitted that she and Danko had begun a sexual relationship prior to that evening.
 {¶ 17} Laura further testified as follows. She went outside to wait in her car. Danko came outside, entered her car and asked her not to leave. He then took her keys and returned to *Page 6 
his house. She thought it was a fair assumption that Danko took her keys because she should not have been driving after drinking.
 {¶ 18} Mr. Brookshire arrived and Laura went to his Jeep, but she realized that Danko had her house key as well as her car key. She told Mr. Brookshire that she would get her keys from Danko because she "didn't want any type of drama." She was concerned that there might be a fight if Mr. Brookshire went to get her keys because Danko might be jealous. As she began to leave the Jeep, Mr. Brookshire asked her, "Why is he pointing a laser at me?" Laura told Mr. Brookshire that she did not know and that Danko was "crazy."
 {¶ 19} Danko was standing in his garage, holding her keys. Laura walked to Danko, who gave her her keys without saying a word. As she was walking to Mr. Brookshire's car, he yelled for her to get in her car. Mr. Brookshire then backed out of Danko's driveway and waited on the roadway. Suddenly, Mr. Brookshire sped around her and left. Laura thought he was just "being a jerk." She then drove to a cousin's house.
 {¶ 20} Laura testified that Mr. Brookshire called her in an upset state and told her that Danko had shot at him. She then called Danko's brother Scott to tell him what had happened.
 {¶ 21} Soon thereafter, Danko sent Laura a series of text messages. In the first, he wrote that the neighbors had shot at his front porch. In the second, Danko wrote, "I know I'm drunk, but I don't know who fired on you. Seriously, Rob, come on, I wouldn't do that to you." In the third, Danko told Laura, "You know I like you." Finally, he asked her in a text message whether she was okay.
 {¶ 22} Laura called Danko later that night and asked him why he would "act crazy" like her husband. He did not respond. Laura testified that she has had continued contact with Danko since that time and that he told her that he does not remember what happened the evening of *Page 7 
December 31, 2006, and early morning of January 1, 2007. Laura testified that Danko has expressed guilt and remorse, and that he has not denied firing at Mr. Brookshire, but that he continues to say he does not recall the events of that evening.
 {¶ 23} Laura testified that she had heard Danko and his brother discuss shining flashlights at the neighbor's house on occasion, but she did not recall them ever discussing shining lasers.
 {¶ 24} Finally, Laura testified that she has been in frequent contact with Danko since the incident. She testified that he calls her from jail up to six times a day.
 {¶ 25} Deputy Paul Schismenos of the Medina County Sheriff's Office testified that he responded to a dispatch for a shooting after midnight on January 1, 2007. He testified that he spoke with Robert Brookshire and Laura Brookshire regarding the incident. He testified that he observed a bullet entry point in Mr. Brookshire's windshield. He testified that he then accompanied other law enforcement personnel to Danko's home and assisted in Danko's arrest after a warrant was obtained.
 {¶ 26} Deputy Schismenos testified that Danko's brother allowed them to enter the home. He testified that he went into Danko's bedroom, where he was sleeping. He testified that another officer found a handgun in a case next to Danko's bed.
 {¶ 27} Deputy Steve Herte of the Medina County Sheriff's Office testified that he learned of a shooting complaint and asked the Seville police department to begin a preliminary investigation because all of the sheriff's office's cars were busy. He testified that he dispatched detectives to the scene and that Deputy Schismenos contacted the prosecutor's office for authority to obtain a warrant for Danko for felonious assault. *Page 8 
 {¶ 28} Deputy Herte testified that he went to Danko's house whereupon Danko's brother allowed the officers into the home. He testified that they arrested Danko and searched his room. He testified that they found a handgun, equipped with an attached laser sight, under the liner in a case next to Danko's bed.
 {¶ 29} Deputy Herte testified that he sent deputies to the garage to search for shell cartridges fired from the handgun. He further testified that he observed a big pile of broken glass in the roadway near Danko's house.
 {¶ 30} Deputy Gary Hubbard of the Medina County Sheriff's Office testified that he also assisted in the investigation of this incident. He testified that he spoke with the victim and had his car taken to the Sheriff's Office for processing. He also went to Danko's house and assisted in Danko's arrest and the search of his home. He testified that the police found a spent shell casing from a handgun on the floor of the garage. The shell casing was from a .45 caliber handgun, like the one found in Danko's bedroom. Deputy Hubbard testified that there was glass on the yellow double center line of the roadway, just west of Danko's driveway.
 {¶ 31} Detective Brady England of the Medina County Sheriff's Office testified that he also investigated this incident. He testified that he assisted in Danko's arrest and the search of his home. He testified that he took measurements of Mr. Brookshire's Jeep and did calculations to determine the path of the bullet that entered the windshield. He testified that the location of the pile of glass in the roadway near Danko's house was consistent with the location where Mr. Brookshire said his car was shot.
 {¶ 32} Detective England testified that he performed a gunshot residue test on Danko's hands. He testified that Danko's hands tested positive for gunshot residue, indicating that he had fired a firearm or picked up a firearm that had been fired. Detective England also testified that *Page 9 
he interviewed Danko. The State played a taped of that interview for the jury. In the tape, Danko denied knowing that Mr. Brookshire was coming over to pick up Laura. He admitted firing a handgun at a tree, but denied firing at Mr. Brookshire. Specifically, Danko said that he fired his handgun eastward from his garage. Danko stated that, if he shot Mr. Brookshire's car, it was an accident.
 {¶ 33} Scott Danko, the defendant's brother, identified the handgun found by police as his brother's handgun. He testified that Danko's gun has always had a laser sight on it. Scott testified that his brother stored the unloaded handgun under or next to his bed and always stored the ammunition separately in a closet.
 {¶ 34} Scott testified that his brother would point the gun laser at the neighbor's house, but that he never knew Danko to point a loaded gun at anyone. He testified that one must manually turn on the laser to activate it. Scott testified that his brother is a very good shot. He further testified that bullets fired from Danko's handgun would hit wherever the laser dot was aimed.
 {¶ 35} Scott testified that he does not believe that his brother would knowingly shoot at anyone. He testified that there was no ill will between his brother and Mr. Brookshire.
 {¶ 36} Although there was some conflicting evidence in this case, this Court will not disturb the jury's factual determinations because the jury is in the best position to determine the credibility of the witnesses during trial. State v. Crowe, 9th Dist. No. 04CA0098-M,2005-Ohio-4082, at ¶ 22. In addition, this Court will not overturn the trial court's verdict on a manifest weight of the evidence challenge only because the jury chose to believe certain witnesses' testimony over the testimony of others. Id. *Page 10 
 {¶ 37} Based on a thorough review of the record, this Court finds that this is not the exceptional case, where the evidence weighs heavily in favor of Danko. A thorough review of the record compels this Court to find no indication that the jury lost its way and committed a manifest miscarriage of justice in convicting Danko of felonious assault. The weight of the evidence supports the conclusion that Danko knowingly used a handgun to shoot at Mr. Brookshire and attempted to cause him physical harm. Mr. Brookshire in fact suffered some physical harm. Although Danko told the police that he was aiming eastward at a tree, Mr. Brookshire testified that he saw Danko point the handgun westward at him. Mr. Brookshire testified that the laser sight from Danko's pistol placed a red dot on his chest for 30-45 seconds and that Danko continued to aim the gun at him even as he backed his Jeep down the street. Accordingly, Danko's conviction for felonious assault is not against the weight of the evidence. Having found that Danko's conviction is not against the weight of the evidence, this Court further necessarily finds that there was sufficient evidence to support the jury's verdict. SeeRoberts, supra. Danko's first assignment of error is overruled.
 ASSIGNMENT OF ERROR II "THE TRIAL COURT ERRED TO THE PREJUDICE OF [DANKO] BY FAILING TO GIVE THE DEFENSE'S REQUESTED JURY INSTRUCTION ON THE LESSER-INCLUDED OFFENSE OF NEGLIGENT ASSAULT."
 {¶ 38} Danko argues that the trial court erred by failing to instruct the jury as to the lesser included offense of negligent assault. This Court disagrees.
 {¶ 39} The first inquiry in our analysis is to determine whether negligent assault is a lesser included offense of felonious assault.
 {¶ 40} The trial court declined to give the lesser included offense instruction because it found, based on the Fifth District's holding inState v. Diles, 5th Dist. No. 03 CA 0011, 2004-Ohio-6368, *Page 11 
at ¶ 21, that negligent assault is not a lesser included offense of felonious assault. While the trial court erred in finding that negligent assault is not a lesser included offense of felonious assault, it was ultimately correct in declining to give the lesser included offense instruction for another reason. This Court has stated:
 "It is well established in Ohio that `a reviewing court is not authorized to reverse a correct judgment merely because erroneous reasons were assigned as a basis thereof.' State ex rel. Carter v. Schotten (1994), 70 Ohio St.3d 89, 92. Further, this Court has held that `an appellate court shall affirm a trial court's judgment that is legally correct on other grounds, that is, one that achieves the right result for the wrong reason, because such an error is not prejudicial.' (Citation omitted.) Cook Family Invests. v. Billings, 9th Dist. Nos. 05CA008689 05CA008691, 2006-Ohio-764, at ¶ 19." Schaaf v. Schaaf, 9th Dist. No. 05CA0060-M, 2006-Ohio-2983, at ¶ 19.
 {¶ 41} This Court earlier held that negligent assault is, in fact, a lesser included offense of felonious assault. State v. Cruz, 9th Dist. No. 03CA0031-M, 2003-Ohio-4782, at ¶ 21.
 {¶ 42} The Ohio Supreme Court set out the test to determine whether an offense is a lesser included offense of another:
 "An offense may be a lesser included offense of another if (i) the offense carries a lesser penalty than the other; (ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (iii) some element of the greater offense is not required to prove the commission of the lesser offense." State v. Deem (1988), 40 Ohio St.3d 205, paragraph three of the syllabus.
 {¶ 43} The felonious assault statute, R.C. 2903.11(A)(2), states, in relevant part, that "[n]o person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." The negligent assault statute, R.C. 2903.14, states, in relevant part, that "[n]o person shall negligently, by means of a deadly weapon or dangerous ordnance * * * cause physical harm to another[.]" R.C. 2901.22(E) provides, in relevant part, that "[w]hen the section defining an offense provides that negligence suffices to *Page 12 
establish an element thereof, then recklessness, knowledge, or purpose is also sufficient culpability for such element."
 {¶ 44} The State argues that negligent assault is not a lesser included offense of felonious assault because one may commit felonious assault by merely attempting to cause physical harm, while actual physical harm is necessary to prove negligent assault. The Ohio Supreme Court recently offered clarification:
 "In determining whether an offense is a lesser included offense of another when a statute sets forth mutually exclusive ways of committing the greater offense, a court is required to apply the second part of the test established in State v. Deem (1988), 40 Ohio St.3d 205, paragraph three of the syllabus, to each alternative method of committing the greater offense." State v. Smith, 117 Ohio St.3d 447, 2008-Ohio-1260, paragraph one of the syllabus.
 {¶ 45} In Smith, the high court analyzed whether theft is a lesser included offense of robbery, stating:
 "Because robbery may be committed by either committing a theft or attempting to commit a theft, there are two possible ways to commit the offense: robbery by theft or robbery by attempted theft. If these two alternatives are essentially treated as separate offenses, then fifth-degree felony theft is a lesser included offense of robbery as statutorily defined in the alternative of robbery by theft, because it would be impossible to ever commit a robbery by theft without also committing a theft." Id. at ¶ 28.
Under this analysis, the Smith court held theft to be a lesser included offense of robbery. Id. at ¶ 29.
 {¶ 46} By the same analysis, felonious assault may be committed by either causing physical harm or by attempting to cause physical harm, effectively creating two separate alternative offenses. Accordingly, negligent assault is a lesser included offense of felonious assault as statutorily defined in the alternative of causing physical harm because it would be impossible to commit felonious assault (knowingly causing physical harm by means of a deadly weapon) without also committing negligent assault. *Page 13 
 {¶ 47} Our inquiry does not end here, however. Danko was entitled to an instruction on the lesser included offense only if the evidence warranted it. Cruz at ¶ 22. The Ohio Supreme Court has held:
 "Even though an offense may be statutorily defined as a lesser included offense of another, a charge on such lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense. (State v. Kidder [1987], 32 Ohio St.3d 279; State v. Davis [1983], 6 Ohio St.3d 91; State v. Wilkins [1980], 64 Ohio St.2d 382, clarified.)" State v. Thomas (1988), 40 Ohio St.3d 213, paragraph two of the syllabus.
 {¶ 48} In this case, the jury could either accept Mr. Brookshire's testimony that Danko aimed his pistol and held the laser sight on Mr. Brookshire's chest, following him as he backed down the road, or the jury could accept Danko's statement to the police that he was aiming at a tree and any shooting of Mr. Brookshire's car was accidental. The trial court instructed the jury regarding accidents, stating that an "accident is a mere physical happening or event out of the usual order of things and not reasonably anticipated as a natural or probable result of a lawful event." If Danko indeed accidentally fired his handgun while merely aiming at a tree and not at Mr. Brookshire, then he would have no culpability in the matter and could not be convicted of either felonious assault or negligent assault. See Cruz at ¶ 23. Here, Danko either aimed his loaded pistol westward at Mr. Brookshire's chest, holding him in his sights as he backed his car down the road, and fired; or Danko fired his pistol eastward toward a tree, nowhere close to Mr. Brookshire's Jeep. In the first case, Danko could not reasonably be acquitted of felonious assault; while in the second, he could not be convicted of either offense. Therefore, an instruction for the lesser included offense of negligent assault was not warranted in this case. Danko's second assignment of error is overruled. *Page 14 
 III. {¶ 49} Danko's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to appellant.
DONNA J. CARR FOR THE COURT
 SLABY, J. MOORE, J. CONCUR *Page 1