[Cite as *State v. Holland*, 2014-Ohio-1964.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                              :

     Plaintiff-Appellee,                :

v.                                         :          No. 13AP-790
                                                     (C.P.C. No. 12CR-4527)
Christopher N. Holland,                     :
                                                     (REGULAR CALENDAR)
     Defendant-Appellant.               :

D E C I S I O N

Rendered on May 8, 2014

*Ron O'Brien,* Prosecuting Attorney, and *Barbara A. Farnbacher,* for appellee.

*Todd W. Barstow,* for appellant.

APPEAL from the Franklin County Court of Common Pleas

CONNOR, J.

{¶ 1} Defendant-appellant, Christopher N. Holland, appeals from a judgment of the Franklin County Court of Common Pleas, convicting him of one count of improperly handling a firearm in a motor vehicle in violation of R.C. 2923.16. For the reasons that follow, we affirm.

 I. Facts and Procedural History

{¶ 2} On August 12, 2013, Columbus Police Officer, Keith O'Connor, worked the evening mid-watch shift which begins at 10:00 p.m. and ends at 5:00 a.m. the next morning. At approximately 1:55 a.m. O'Connor observed a south bound vehicle pass his police cruiser as he was driving north bound on High Street near Hubbard Avenue. According to O'Connor, the vehicle in question, driven by appellant, was "going a much

higher rate of speed than all the other traffic southbound." (July 24, 2013, Tr. 10.) O'Connor immediately turned his vehicle south and followed the suspect vehicle as it proceeded south on High Street. O'Connor testified that he "witnessed [appellant] go left of center" and that he "[c]ould also hear his stereo from greater than 50 feet away." (July 24, 2013, Tr. 10.)

{¶ 3}   O'Connor activated the overhead lights on the cruiser and stopped the suspect vehicle on High Street near Lincoln Avenue. O'Connor exited his cruiser and approached the suspect vehicle on foot. He asked appellant for his driver's license and proof of insurance. When appellant rolled down the driver's side window, O'Connor noticed a second individual sitting in the passenger seat and he detected the odor of burnt marijuana. (July 24, 2013, Tr. 19.) O'Connor determined that he would search the vehicle for marijuana and he asked the help of another officer who had just arrived at the scene. (July 24, 2013, Tr. 23.)

{¶ 4}   O'Connor and the other officer removed appellant and his passenger from the vehicle. (July 24, 2013, Tr. 23.) O'Connor informed both men that he had smelled marijuana and that he was going to conduct a search of their persons and of the vehicle. (July 24, 2013, Tr. 24.) O'Connor did not find anything illegal on either man but his search of the vehicle uncovered a loaded pistol magazine in the driver's side storage compartment. (July 24, 2013, Tr. 27.)  A further search of the vehicle revealed a pistol in the glove compartment and a mason jar containing marijuana in the center console. (July 24, 2013, Tr. 28.)  O'Connor placed appellant under arrest.

{¶ 5}   A Franklin County Grand Jury issued an indictment charging appellant with one count of improperly handling a firearm in a motor vehicle in violation of R.C. 2923.16. On April 8, 2013, appellant filed a motion to suppress the evidence uncovered as a result of the traffic stop. On July 2, 2013, the trial court conducted an evidentiary hearing on the motion. On July 24, 2013, the trial court announced its decision to deny the motion to suppress.

{¶ 6}   Thereafter, on August 12, 2013, appellant entered a plea of no contest to the charge in the indictment. By judgment entry dated August 13, 2013, the trial court convicted appellant of improper handling of a firearm and sentenced him to a term of six

months of community control under basic non-reporting supervision. Appellant filed his notice of appeal to this court on September 12, 2013.[1]

## II. Assignment of Error

{¶ 7} Appellant asserts the following as his sole assignment of error:

> I. THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY OVERRULING HIS MOTION TO SUPPRESS EVIDENCE.

## III. Standard of Review

{¶ 8} Appellate review of a trial court's decision regarding a motion to suppress evidence involves mixed questions of law and fact. *State v. Helmbright,* 10th Dist. No. 11AP-1080, 2013-Ohio-1143. Accordingly, an appellate court's standard of review of a motion to suppress is two-fold. *State v. Reedy,* 10th Dist. No. 05AP-501, 2006-Ohio-1212, ¶ 5, citing *State v. Lloyd*, 126 Ohio App.3d 95, 100-01 (7th Dist.1998). First, we must determine whether competent, credible evidence supports the trial court's findings. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. Second, we must independently determine whether the facts satisfy the applicable legal standard, without giving any deference to the conclusion of the trial court. *Id.*

## IV. Legal Analysis

{¶ 9} In appellant's sole assignment of error, appellant contends that the trial court erred by overruling his motion to suppress. In *State v. Smith*, 10th Dist. No. 13AP-592, 2014-Ohio-712, this court set forth the appropriate analytical framework as follows:

> It is well-established that stopping an automobile, thus temporarily detaining its occupants, constitutes a seizure under the Fourth Amendment to the U.S. Constitution. *State v. Dorsey,* 10th Dist. No. 04AP-737, 2005-Ohio-2334, ¶ 17, citing *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). A traffic stop is constitutionally valid, however, if an officer has a reasonable and articulable suspicion that a motorist has committed, is committing, or is about to commit a crime, including a traffic violation. *State v. Mays*, 119 Ohio St .3d 406, 2008-Ohio-4539, ¶ 7, citing *Prouse* at 663; *State v. McCandlish,* 10th Dist. No. 11AP–913, 2012-Ohio-3765, ¶ 10

---

[1] The trial court issued an electronically signed "Amended Judgment Entry" on September 27, 2013.

(observation of traffic violation is enough for reasonable and articulable suspicion to stop car); State v. Barker, 10th Dist. No. 11AP–170, 2011–Ohio–5769, ¶ 12–13. "Reasonable suspicion entails some minimal level of objective justification, 'that is, something more than an inchoate and unparticularized suspicion or "hunch," but less than the level of suspicion required for probable cause.' " *State v. Jones*, 188 Ohio App.3d 628, 2010-Ohio-2854, ¶ 17 (10th Dist.), quoting *State v. Jones*, 70 Ohio App.3d 554, 556-57 (2nd Dist. 1990). In evaluating reasonable suspicion to support the propriety of a traffic stop, a reviewing court must consider the totality of the circumstances surrounding the stop as " 'viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold.' " *McCandlish* at ¶ 7, quoting *State v. Andrews,* 57 Ohio St.3d 86, 87-88 (1991).

*Id.* at ¶ 10.

{¶ 10} The only issue raised by this appeal is the legality of the initial traffic stop. If the stop was legal, the evidence uncovered in the search of the vehicle is not subject to suppression. However, if the initial traffic stop is constitutionally infirm, then the trial court must suppress the evidence uncovered in the vehicle search as the fruits of an illegal investigatory stop. *State v. Owens*, 10th Dist. No. 03AP-423, 2004-Ohio-5159, ¶ 14-15, citing *Terry v. Ohio*, 392 U.S. 1 (1968).

{¶ 11} On cross-examination, O'Connor explained the reason he stopped appellant's vehicle as follows:

> Q. Okay. But clearly the defendant's car was traveling at such an excessive rate of speed that you felt it necessary to follow him and stop him, correct?
>
> A. I wasn't following him and stopping him for the speed, but speed is an indicator of intoxication a lot of times. And that was - - at that particular time of night, that's my main traffic concern is OVIs, and when I - - that was something that brought my attention to him and caused me to turn and follow him.
>
> Q. I think it would be fair to say that the real reason that you followed him, like you said, was you were investigating a possible OVI, correct?

A. Correct. Yes.

(July 2, 2013, Tr. 39-40.)

{¶ 12} On re-direct examination, O'Connor testified that the speed limit on High Street near Hubbard Avenue is "[t]hirty miles an hour, I believe." (July 2, 2013, Tr. 64.) According to O'Connor, there was a considerable amount of vehicle and pedestrian traffic in the area as it was at or near closing time for the local bars. (July 2, 2013, Tr. 13.) O'Connor estimated that he makes roughly 100 drunk driving stops per year in that area of town. (July 2, 2013, Tr. 16.) Exhibit I evidences the fact that O'Connor cited appellant for a marked lane violation and "loud sound system prohibited." (July 2, 2013, Tr. 17.) O'Connor did not issue a speeding citation nor did he conduct a field sobriety test of appellant.

{¶ 13} On cross-examination, O'Connor testified that the reason he was able to catch up with appellant's vehicle shortly after he began following was because appellant stopped at a red light. Even though O'Connor acknowledged that appellant's vehicle was approaching a red light when he first observed it, he did not retract his earlier estimate regarding the speed of appellant's vehicle. (July 2, 2013, Tr. 48.) Similarly, while O'Connor reluctantly agreed that appellant's vehicle went left of the center line as it moved past another vehicle that was pulling over to the right side of the road, he did not agree that appellant "immediately" returned to his marked lane. (July 2, 2013, Tr. 48.)

{¶ 14} The videotape recorder mounted in O'Connor's police cruiser captured the entire traffic stop. (State's exhibit G.) The trial court viewed the videotape as O'Connor provided narration. (July 2, 2013, Tr. 31.) In denying appellant's motion to suppress, the trial court stated:

> THE COURT: The key thing in this whole incident, I think, in the motion to suppress deals with what the officer did, what the officer observed. The officer testified that he observed the vehicle proceeding - - that Mr. Holland was in, proceeding in the opposite direction, and that it appeared to him to be speeding - - got at an excessive speed.
>
> Now, in reviewing the video, the Court was not able to confirm that or to disprove that - - to prove it or disprove it, so we're

stuck with the observation of the police officer in that he did not have a radar or anything else. He was going by his estimation of this speed, and he felt that the vehicle was speeding.

He never during the course of his testimony stated at what speed he thought the vehicle was going. He gave no opinion with respect to how fast it was going, but - - nor did he testify about what the speed limit in the area was, which is of concern to me.

No estimation of how fast and no estimation of - - and no testimony concerning what the speed limit was. He just said he was going at a high rate of speed - - rate of speed as it was approaching the stop light, and this was what was portrayed on the dash cam that is the subject of Exhibit G.

* * *

The issue of the speed and the testimony concerning that still concerns me - - was that in fact established? But I think one of the things that - - this was a suppression hearing, and the police officer testified that the vehicle was proceeding at a high rate of speed, and I think given that testimony, then the Court should find that - - if it was proceeding at a high rate of speed, that included in that is that it was going above the posted speed limit and, in the opinion of the officer, at a speed that was prohibited, hence the stop in this case.

So the motion to suppress will be denied.

(July 23, 2013, Tr. 2-4.)

{¶ 15} Although the trial court, in making its ruling, relied exclusively upon O'Connor's estimation that appellant's vehicle was speeding, our task is to consider the totality of the circumstances and independently determine whether they provide sufficient objective justification for the traffic stop. *See Smith.* Indeed, an appellate court will affirm a trial court's judgment on a motion to suppress evidence if the judgment is legally correct even though the grounds cited by the trial court are erroneous. *State v. Danko*, 9th Dist. No. 07CA0070-M, 2008-Ohio-2903, ¶ 40; *State v. Sullins*, 4th Dist. No. 94CA2058 (Sept. 8, 1995). Similarly, the fact that O'Connor initially suspected appellant

of drunk driving but never cited him for that offense is not relevant to our analysis. Indeed, "[t]he standard is an objective, not subjective, one: 'would the facts available to the officer at the moment of the seizure or the search "warrant a man of reasonable caution in the belief" that the action taken was appropriate?" ' " *State v. McCandlish,* 10th Dist. No. 11AP-913, 2012-Ohio-3765, citing *Terry.*[2]

{¶ 16} Our independent review of the videotape corroborates O'Connor's testimony that appellant's vehicle crossed the marked lane of traffic. R.C. 4511.33 states in relevant part:

> (A) Whenever any roadway has been divided into two or more clearly marked lanes for traffic, or wherever within municipal corporations traffic is lawfully moving in two or more substantially continuous lines in the same direction, the following rules apply:
>
> (1) A vehicle or trackless trolley shall be driven, as nearly as is practicable, entirely within a single lane or line of traffic and shall not be moved from such lane or line until the driver has first ascertained that such movement can be made with safety.[3]

{¶ 17} While we agree with appellant that the videotape may not provide proof, beyond a reasonable doubt, that appellant violated the statute, there is no question that the videotape shows appellant's vehicle crossing over the marked southbound lane. The videotape also shows that when O'Connor first addressed appellant, he asked appellant why he was going so fast and why he could not keep his vehicle in his marked lane. Moreover, the existence of a possible defense to a marked lanes violation does not impact our determination whether the traffic stop was valid. *State v. Hernandez,* 10th Dist. No. 09AP-765, 2010-Ohio-2066, ¶ 15, citing *State v. Stokes*, 10th Dist. No. 07AP-960, 2008-Ohio-5222, ¶ 21. Indeed, in the context of a motion to suppress evidence uncovered following a traffic stop, "[a]n officer is not required to determine whether someone who has been observed committing a crime might have a legal defense to the charge." *State v.*

---

[2] *See also Carroll v. United States*, 267 U.S. 132 (1925); *State v. Williams*, 51 Ohio St.3d 58, 60-61 (1990).
[3] "Columbus City Code section 2131.08(a)(1) * * * is substantially similar to Revised Code section 4511.33(A)(1)." (Appellant's brief, 4.)

*Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539,¶ 17, (Driver's possible defense to a marked lane violation was irrelevant to question whether police officer had a reasonable and articulable suspicion to initiate a traffic stop). *See also McCandlish* at ¶ 9 citing *State v. Stevens,* 4th Dist. No. 00 CA 05 (Aug. 30, 2000) ("Driving left of center is a violation of R.C. 4511.25(A) that can, by itself, constitute reasonable suspicion to support a valid traffic stop.").

{¶ 18} The fact that exhibit G does not corroborate O'Connor's claim that appellant's sound system could be heard from 50 feet away is of little consequence to our analysis.[4] " 'The "reasonable and articulable suspicion" analysis is based on the *collection* of factors, not on the individual factors themselves.' " (Emphasis sic.) *Mays* at ¶ 12, quoting *State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, ¶ 19. Indeed, the Supreme Court of Ohio has stated that "*Terry* 'precludes this sort of divide-and-conquer analysis.' " *Batchili* quoting *United States v. Arvizu,* 534 U.S. 266, 274 (2002). When we consider the videotape evidence that appellant's vehicle crossed over into the northbound lane, O'Connor's testimony that appellant's vehicle was traveling at an excessive rate of speed, and O'Connor's claim that he could hear appellant's sound system from a distance of 50 feet, we find that the circumstances clearly permit a reasonable and prudent officer in O'Connor's position to suspect that appellant had committed a traffic offense. The fact that the traffic stop occurred at a time of morning when the local bars are closing in an area of town where O'Connor has made numerous drunk driving arrests further supports the reasonableness of his suspicion.

{¶ 19} In short, the totality of the circumstances supports a constitutionally valid traffic stop. Inasmuch as the initial vehicle stop was constitutionally valid, the evidence uncovered in the subsequent vehicle search was not subject to suppression. *Smith; McCandlish.* Appellant's sole assignment of error is overruled.

**V. Conclusion**

---

[4] The audio portion of exhibit G was not activated when appellant's vehicle initially passed O'Connor's cruiser.

{¶ 20} For the foregoing reasons, we hold that the trial court did not err when it denied appellant's motion to suppress, albeit for a different reason than stated in the trial court's decision. Having overruled appellant's sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

O'GRADY and LUPER-SCHUSTER, JJ., concur.

———————————