[Cite as *State v. Reilly*, 2020-Ohio-850.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### SENECA COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                CASE NO.  13-19-28

      v.

LOUIS A. REILLY,                    O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Seneca County Common Pleas Court
Trial Court No. 19 CR 0019

**Judgment Affirmed**

**Date of Decision:   March 9, 2020**

APPEARANCES:

    *W. Alex Smith* for Appellant

    *Angela M. Boes* for Appellee

**ZIMMERMAN, J.**

{¶1} Defendant-appellant, Louis A. Reilly ("Reilly"), appeals the July 31, 2019 judgment entry of sentence the Seneca County Court of Common Pleas. We affirm.

{¶2} The facts of this case begin with the arrest of Reilly's roommate, Adam Barto ("Barto"), on January 24, 2019. Barto—who was the subject of a criminal investigation by the Seneca County Drug Task Force METRICH Enforcement Unit ("drug task force")—was arrested outside of the residence that he shared with Reilly. Subsequent to Barto's arrest, law enforcement entered the residence without a warrant after hearing persons inside the residence "scurrying" about the residence when they were alerted to law enforcement's presence. Law enforcement entered the residence (without a warrant) over the concern that those persons inside the residence may destroy drug evidence. Once inside the residence, law enforcement located Reilly exiting a bathroom and saw drugs in plain view on the (bathroom) floor and in the (bathroom) toilet. Thereafter, law enforcement obtained a search warrant to search the residence and discovered, in particular, drugs and tools commonly associated with the drug trade.

{¶3} On February 20, 2019, the Seneca County Grand Jury indicted Reilly on five criminal charges: Count One of permitting drug abuse in violation of R.C. 2925.13(B), (C)(3)(a), a fifth-degree felony; Counts Two and Three of aggravated

possession of drugs in violation of R.C. 2925.11(A), (C)(1)(a), third-degree felonies; Count Four of possession of drugs in violation of R.C. 2925.11(A), (C)(2)(a), a fifth-degree felony; and Count Five of tampering with evidence in violation of R.C. 2921.12(A), (B), a third-degree felony. (Doc. No. 2). Reilly appeared for arraignment on March 6, 2019 and entered pleas of not guilty. (Doc. No. 12).

{¶4} On March 18, 2019, at Reilly's request, the trial court ordered Reilly to be evaluated for his competency to stand trial. (Doc. Nos. 14, 15). On April 24, 2019, after a hearing on April 23, 2019, the trial court concluded that Reilly was competent to stand trial, which Reilly does not challenge. (Doc. No. 18).

{¶5} On May 20, 2019, Reilly filed a motion to suppress evidence in which he argued that law enforcement "made entry into [his] house without a search warrant and then secured the house and occupants before seeking a search warrant" and that law enforcement "then used evidence observed in the illegal search of the house to bolster the affidavit." (Doc. No. 21). After a hearing on June 24, 2019, the trial court on July 9, 2019 denied Reilly's motion to suppress evidence. (Doc. No. 25).

{¶6} On July 30, 2019, Reilly withdrew his pleas of not guilty and entered pleas of no contest with a "consent finding of guilty," under a negotiated plea agreement, to the counts in the indictment. (Doc. Nos. 39, 40, 41). In exchange for

his change of pleas, the State agreed to a joint-sentencing recommendation. (Doc. No. 40). The trial court accepted Reilly's pleas of no contest and found him guilty. (Doc. No. 41). The trial court held its sentencing hearing that same day and sentenced Reilly (based on the parties' joint-sentencing recommendation) to: 10 months in prison as to Counts One, Three, and Four, respectively, and 18 months in prison as to Count Two and Five, respectively. (Doc. No. 42). The trial court ordered Reilly to serve consecutively the prison terms imposed as to Counts Three and Five. (*Id.*). The trial court further ordered that the prison terms imposed as to Counts One, Three, and Four to be served concurrently to the consecutive sentences under Counts Three and Five for a total term of 36 months in prison. (*Id.*).

{¶7} On August 8, 2019, Reilly filed a notice of appeal, and raises one assignment of error. (Doc. No. 47).

## Assignment of Error

### The Trial Court Erred When it Denied the Defendant's Motion to Suppress

{¶8} In his assignment of error, Reilly argues that the trial court erred by denying his motion to suppress evidence. Reilly argues that law enforcement's entry into his residence (and subsequent search) was conducted without a warrant and not pursuant to any exception to the warrant requirement of the Fourth Amendment. Further, he contends that law enforcement improperly used evidence obtained from its warrantless search to obtain a search warrant. For the reasons

-4-

below, we conclude that law enforcement's warrantless entry into Reilly's residence was lawfully conducted under the exigent-circumstances exception—namely, the need to prevent the destruction of evidence—to the Fourth Amendment.

*Standard of Review*

{¶9} A review of the denial of a motion to suppress involves mixed questions of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to evaluate the evidence and the credibility of witnesses. *Id. See also State v. Carter*, 72 Ohio St.3d 545, 552 (1995). When reviewing a ruling on a motion to suppress, "an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside* at ¶ 8, citing *State v. Fanning*, 1 Ohio St.3d 19 (1982). With respect to the trial court's conclusions of law, however, our standard of review is de novo, and we must independently determine whether the facts satisfy the applicable legal standard. *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist.1997).

*Analysis*

{¶10} "The Fourth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, and Ohio Constitution, Article I, Section 14, protects individuals against 'unreasonable searches and seizures' by the government and protects privacy interests where an individual has a reasonable

expectation of privacy." *State v. Fielding*, 10th Dist. Franklin Nos. 13AP-654 and 13AP-655, 2014-Ohio-3105, ¶ 15, quoting *Smith v. Maryland*, 442 U.S. 735, 740, 99 S.Ct. 2577 (1979). *See also State v. Steinbrunner*, 3d Dist. Auglaize No. 2-11-27, 2012-Ohio-2358, ¶ 12. "An expectation of privacy is protected by the Fourth Amendment where (1) an individual has exhibited a subjective expectation of privacy, and (2) that expectation of privacy is one that 'society is prepared to recognize as "reasonable."'" *Fielding* at ¶ 15, quoting *Smith* at 740, quoting *Katz v. United States*, 389 U.S. 347, 361, 88 S.Ct. 507 (1967) (Harlan, J., concurring). "Generally, any evidence obtained in violation of the Fourth Amendment, as well as any evidence seized subsequent to such violation, must be suppressed as 'fruit of the poisonous tree.'" *Id.*, quoting *Wong Sun v. United States*, 371 U.S. 471, 488, 83 S.Ct. 407 (1963). *See also State v. Jenkins*, 3d Dist. Union No. 14-10-10, 2010-Ohio-5943, ¶ 9 (noting that the Fourth Amendment does not explicitly provide "that violations of its provisions against unlawful searches and seizures will result in the suppression of evidence obtained as a result of such violation, but the United States Supreme Court has held that the exclusion of evidence is an essential part of the Fourth Amendment"), citing *Mapp v. Ohio*, 367 U.S. 643, 649, 81 S.Ct. 1684 (1961) and *Weeks v. United States*, 232 U.S. 383, 394, 34 S.Ct. 341 (1914).

{¶11} "A warrantless search of a person's home is presumed unreasonable unless an exception to the warrant requirement is shown." *State v. Yost*, 5th Dist.

Perry No. 18-CA-00024, 2019-Ohio-5446, ¶ 23, citing *State v. Diaz*, 5th Dist. Stark No. 2016 CA 00113, 2017-Ohio-262, ¶ 16, citing *State v. Angelo*, 9th Dist. Summit No. 24751, 2009-Ohio-6966, ¶ 10. "At a suppression hearing, the State bears the burden of establishing that a warrantless search and seizure falls within one of the exceptions to the warrant requirement, and that it meets Fourth Amendment standards of reasonableness." *Steinbrunner* at ¶ 12, citing *Xenia v. Wallace*, 37 Ohio St.3d 216 (1988), paragraph two of the syllabus, *State v. Kessler*, 53 Ohio St.2d 204, 207 (1978), and *Maumee v. Weisner*, 87 Ohio St.3d 295, 297 (1999).

{¶12} "Exigent circumstances are a well-established exception to the Fourth Amendment's warrant requirement." *State v. Byrd*, 2d Dist. Montgomery No. 27340, 2017-Ohio-6903, ¶ 13, citing *State v. Berry*, 167 Ohio App.3d 206, 2006-Ohio-3035, ¶ 12 (2d Dist.). *See also State v. Akron Airport Post No. 8975*, 19 Ohio St.3d 49, 51 (1985).

> The exigent or emergency circumstances exception to the warrant requirement applies in a variety of situations, including when entry into a building is necessary to protect or preserve life, to prevent physical harm to persons or property, or *to prevent the concealment or destruction of evidence*, or when officers are in "hot pursuit" of a fleeing suspect or someone inside poses a danger to the police officer's safety.

(Emphasis added.) *Byrd* at ¶ 13, citing *State v. Sharpe*, 174 Ohio App.3d 498, 2008-Ohio-267, ¶ 48 (2d Dist.) and *Kentucky v. King*, 563 U.S. 452, 460, 131 S.Ct. 1849 (2011). "'In order to justify an exception to the warrant requirement, the costs

involved in obtaining a warrant must be sufficiently significant to justify avoiding the delay inherent in procuring a warrant.'" *Id.*, quoting *Sharpe* at ¶ 29. *See also State v. Garrett*, 2d Dist. Montgomery No. 27630, 2018-Ohio-4530, ¶ 34 ("'[U]nder the rubric of exigent circumstances, a true emergency must exist which excuses the failure to obtain a warrant[.]'"), quoting *State v. Burchett*, 2d Dist. Montgomery No. 20166, 2004-Ohio-3095, ¶ 17.

{¶13} "Whether exigent circumstances are present is determined through an objective test that looks at the totality of the circumstances confronting the police officers at the time of the entry." *State v. Enyart*, 10th Dist. Franklin Nos. 08AP-184 and 08AP-318, 2010-Ohio-5623, ¶ 21, citing *United States v. MacDonald*, 916 F.2d 766, 769 (2d Cir.1990). "'[A]n important factor to be considered when determining whether any exigency exists is the gravity of the underlying offense for which the arrest is being made.'" *Garrett* at ¶ 43, quoting *Welsh v. Wisconsin*, 466 U.S. 740, 753, 104 S.Ct. 2091 (1984). "'The duration of the intrusion and the scope of the search are governed by the constitutional command of reasonableness, which will be evaluated in terms of the emergency. Once the emergency conditions have been alleviated, further intrusion must be sanctioned by a warrant.'" *State v. Bethel*, 5th Dist. Tuscarawas No. 10-AP-35, 2011-Ohio-3020, ¶ 26, quoting Katz, *Ohio Arrest, Search and Seizure*, Section 10.5, at 185-186 (1999). *See also State v. Kulyk*, 5th Dist. Guernsey No. 01 CA 13, 2002 WL 491849, *4 (Apr. 1, 2002) (noting that

"the duration and scope of that intrusion and search are evaluated in terms of the emergency, and once that emergency has been alleviated, further intrusion must be sanctioned by a warrant").

{¶14} "It is well established that a warrantless entry is justified under exigent circumstances where there is imminent danger that evidence will be lost or destroyed if a search is not immediately conducted." *Garrett* at ¶ 36, citing *State v. Moore*, 90 Ohio St.3d 47, 52 (2000). *See also King* at 460; *State v. Benvenuto*, 3d Dist. Allen No. 1-17-39, 2018-Ohio-2242, ¶ 22. "'This need may be particularly compelling where narcotics are involved, for "narcotics can be easily and quickly destroyed while a search is progressing."'" *United States v. Johnson*, 457 Fed.Appx. 512, 516 (6th Cir.2012), quoting *United States v. Sangineto-Miranda*, 859 F.2d 1501, 1511-1512 (6th Cir.1988), quoting *United States v. Socey*, 846 F.2d 1439, 1444-1445 (D.C.Cir.1988), and citing *Illinois v. McArthur*, 531 U.S. 326, 331-332, 121 S.Ct. 946 (2001) and *Modrell v. Hayden*, 436 Fed.Appx. 568, 578-579 (6th Cir.2011). *See also Moore* at 52 ("Because marijuana and other narcotics are easily and quickly hidden or destroyed, a warrantless search may be justified to preserve evidence.").

{¶15} "'[A] warrantless entry to prevent the destruction of evidence is justified if the government demonstrates: "(1) a reasonable belief that third parties are inside the dwelling; and (2) a reasonable belief that these third parties may soon

become aware the police are on their trail, so that the destruction of evidence would be in order.'"" *Enyart* at ¶ 21, quoting *United States v. Lewis*, 231 F.3d 238, 241 (6th Cir.2000), quoting *Sangineto-Miranda* at 1512, and citing *State v. Russell*, 4th Dist. Athens No. 97 CA 37, 1998 WL 357546, *18 (June 30, 1998), quoting *United States v. Bates*, 84 F.3d 790, 796 (6th Cir.1996). However, "warrantless entry to prevent the destruction of evidence is reasonable" only when law enforcement "did not create the exigency by engaging or threatening to engage in conduct that violates the Fourth Amendment." *King* at 462.

{¶16} At the suppression hearing in this case, the State offered the testimony of Officer Justin Nowak ("Officer Nowak") of the Tiffin Police Department, who was assigned to the drug task force. (June 24, 2019 Tr. at 17). Officer Nowak testified that the drug task force was tracking Barto through a GPS tracking device affixed to Barto's vehicle. (*Id.* at 18, 23). Based on the drug task force's monitoring of Barto's movements, it was determined that Barto was residing at 55 East New Haven Street, Bloomville, Ohio (the "residence"). (*Id.* at 19, 23-24). (*See also id.* at 28). Officer Nowak testified that, on January 24, 2019, the drug task force was awaiting Barto's to return the residence to arrest him. (*Id.* at 24-25). Specifically, law enforcement had warrants for Barto's arrest and to search the vehicle being operated by Barto. (*Id.* at 26-27).

{¶17} Office Nowak testified that, when Barto arrived around 7:30 a.m., "there were officers staged at the rear of the residence. There was a private drive that was at the rear of [the residence] that pulled into a garage and backyard area. Officers were staked around the garage, the alleyway, as well as around the rear of the residence." (*Id.* at 25). According to Officer Nowak, while law enforcement waited for Barto to arrive, "officers had heard residents inside the home" and "determined that [their] cover had * * * been detected at that time * * * ." (*Id.*). Specifically, "the officer staged at the rear of the residence" "heard voices inside that indicated that someone knew someone was outside, and * * * heard * * * scurrying, or moving abruptly throughout the residence." (*Id.* at 26).

{¶18} After Barto was arrested, "[o]fficers made entry into the residence." (*Id.* at 27). More specifically, "[o]fficers knocked at the rear door of the residence. When no one answered the door, entry was made. Four subjects were located inside, and a cursory search was conducted and they were detained." (*Id.*).

{¶19} Importantly, Officer Nowak testified that it was necessary for law enforcement to enter the residence because it was believed that the persons inside the residence could be destroying evidence. (*Id.* at 28-29). That is, "[t]he noises that the officers heard inside where they stated that it sounds as if people knew someone was outside and was scurrying about the residence, and then by knocking on the door and nobody answering or responding" led law enforcement to believe

that those persons could be destroying evidence. (*Id.* at 29). Indeed, Officer Nowak testified that, because law enforcement surveilled Barto at the residence, it was likely that Barto was conducting illegal-drug activity inside the residence.[1] (*Id.* at 28-29).

{¶20} Moreover, according to Officer Nowak's testimony based on his training and experience, it is likely that other persons present at locations at which suspected illegal-drug activity is occurring are "affiliated or known associates" of the principal offender. (*Id.* at 29). Therefore, law enforcement concluded that it was likely that the persons inside the residence could be destroying drug evidence. (*Id.* at 29-30). And, on entering the residence, law enforcement found Reilly exiting the bathroom where drugs were on the floor and in the toilet in plain view. (*Id.* at 30-31). Thereafter, law enforcement obtained a search warrant and searched the residence. (*Id.* at 33-34).

{¶21} Here, the trial court denied Reilly's motion to suppress evidence after concluding that "[s]ufficient exigent circumstances existed to allow law enforcement to enter the residence to ensure their safety, and the safety of others on the scene." (Doc. No. 25). In other words, the trial court concluded that law enforcement's warrantless entry and search was justified under the protective-sweep

---

[1] Barto admitted to law enforcement—prior to its obtaining a search warrant for the residence—that drugs, drug paraphernalia, and a firearm would be found in his bedroom. (June 24, 2019 Tr. at 33).

doctrine.[2] Notwithstanding the trial court's conclusion, we conclude that, based on the totality of the circumstances of this case, exigent circumstances existed to justify the warrantless entry and limited search of the residence because competent, credible evidence exists in the record reflecting that it was reasonable for law enforcement to believe that the drug evidence was at risk of being destroyed if the officers did not immediately enter to secure the scene. *See King*, 563 U.S. at 457;

---

[2] Although a difference of opinion exists whether the protective-sweep doctrine permits limited searches of a person's home "if there is a likelihood that another person may be on the premises who may destroy evidence," we decline to extend the protective-sweep doctrine to prevent the destruction of evidence here. *Jackson v. United States*, 479 U.S. 910, 107 S.Ct. 308 (1986) (White, J., dissenting) (acknowledging the conflict between courts "allowing a protective sweep when the police only suspect that another person on the premises may destroy evidence" and courts permitting only "the more stringent safety-based approach"). *Compare State v. Koon*, 2d Dist. Montgomery No. 26296, 2015-Ohio-1326, ¶ 16, fn. 1 ("The State also argues that a warrantless entry into Koon's residence was justified to prevent the destruction of evidence. Just like a protective sweep, however, a warrantless entry to prevent the destruction of evidence still requires a reasonable belief that someone remains inside the residence.") *with State v. Yost*, 5th Dist. Perry No. 18-CA-00024, 2019-Ohio-5446, ¶ 53 (Wise, J., dissenting) (concluding that "exigent circumstances did not exist to justify a protective sweep of the residence to prevent removal or destruction of evidence"). "'A "protective sweep" is a quick and limited search of premises, incident to an arrest and conducted to protect the *safety* of police officers or others. It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding.'" (Emphasis added.) *State v. Byrd*, 2d Dist. Montgomery No. 27340, 2017-Ohio-6903, ¶ 15, quoting *Maryland v. Buie*, 494 U.S. 325, 327, 110 S.Ct. 1093 (1990). *See also State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, ¶ 188. Indeed, "'[t]he scope of the protective sweep must not exceed that reasonably necessary to protect the *safety* of the officers.'" (Emphasis added.) *State v. Chavez*, 2d Dist. Montgomery No. 27840, 2018-Ohio-4351, ¶ 31, quoting *State v. Lyons*, 83 Ohio App.3d 525, 534 (2d Dist.1992). Moreover, because we conclude that law enforcement's entry into the residence was justified under the exigent-circumstances exception to prevent the destruction of evidence, we need not address whether the protective-sweep doctrine could justify a warrantless *entry* into a home. *See State v. Mickey*, 8th Dist. Cuyahoga No. 82844, 2003-Ohio-6878, ¶ 17 (noting that "the instances in which law enforcement can lawfully perform warrantless protective sweeps" has been extended "to include situations where the arrest was made outside of, but near, the home"), citing *United States v. Ford*, 56 F.3d 265 (D.C.Cir.1995) and *United States v. Colbert*, 76 F.3d 773 (D.C.Cir.1996). *See also State v. Adams*, 7th Dist. Mahoning No. 08 MA 246, 2011-Ohio-5361, ¶ 41, citing *U.S. v. Oguns*, 921 F.2d 442, 446 (2d Cir.1990) (permitting a protective sweep of a home even where the arrest occurs outside), *rev'd in part on other grounds*, 144 Ohio St.3d 429, 2015-Ohio-3954. Under the protective-sweep doctrine, "as an incident to the arrest the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." *Buie* at 334. Beyond that, "protective sweeps are permitted when officers possess 'a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene.'" *Chavez* at ¶ 31, quoting *Buie* at 337.

*Benvenuto*, 2018-Ohio-2242, at ¶ 25; *Johnson*, 457 Fed.Appx. at 515; *United States v. Waide*, E.D.Ky CR No. 5:18-116-KKC, 2019 WL 1521973, *7 (Apr. 8, 2019).

{¶22} Moreover, law enforcement's warrantless entry was justified because it had a reasonable belief that third parties were inside the residence and a reasonable belief that those parties were aware of law enforcement's presence making the destruction of evidence probable. Specifically, Officer Nowak testified that the law enforcement officers positioned outside the residence not only heard third parties inside the residence, but heard those parties acknowledge law enforcement's presence. *See State v. Melvin*, 2d Dist. Montgomery No. 27248, 2017-Ohio-7938, ¶ 13 (concluding that law enforcement's warrantless entry into the residence was justified under the exigent-circumstances exception because law enforcement was "concern[ed] that evidence would be destroyed or weapons obtained" after law enforcement was "discovered outside the house while preparing to execute the warrant"). Further, Officer Nowak testified that those law enforcement officers heard those third parties begin to scurry or move abruptly through the residence. *See Gaston v. Toledo*, 106 Ohio App.3d 66, 77 (6th Dist.1995) (noting that "particularized reasons can involve evidence of any unusual activity, noise or conduct indicating the destruction of evidence is being attempted"). Importantly, Officer Nowak testified that, based on these facts, and the knowledge that it is likely that third parties who share a residence with a known drug offender also engage in

illegal drug activity, law enforcement concluded that drug evidence was at risk of being destroyed if law enforcement did not immediately enter and secure the residence. *See Benvenuto* at ¶ 25. *See also Waide* at *10. Indeed, once inside the residence, law enforcement discovered Reilly actually trying to destroy evidence— that is, law enforcement found drugs in the toilet immediately after Reilly exited that bathroom.

{¶23} Once inside the residence, law enforcement properly limited the scope of their intrusion to only what was necessary to secure the premises and ensure that evidence would not be destroyed.[3] *State v. Martin*, 1st Dist. Hamilton No. C-040150, 2004-Ohio-6433, ¶ 41 (holding that law enforcement "properly limited the scope of their intrusion into [the residence] to only that necessary to secure the premises and to ensure that evidence would not be destroyed"). *See also State v. Brewster*, 157 Ohio App.3d 342, 2004-Ohio-2722, ¶ 32 (1st Dist.).

{¶24} For these reasons, the trial court did not err by denying Reilly's motion to suppress evidence obtained from law enforcement's warrantless entry into his residence or its subsequent search of the residence under the search warrant (albeit for a different reason than stated in the trial court's decision). *See State v. Holland*, 10th Dist. Franklin No. 13AP-790, 2014-Ohio-1964, ¶ 20 (affirming the trial court's

---

[3] Because we conclude that law enforcement's search of the residence in this case was within the scope necessary to prevent the destruction of evidence, we need not address the application of the protective-sweep doctrine in this case.

denial of Holland's motion to suppress evidence "for a different reason than stated in the trial court's decision").

{¶25} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

***Judgment Affirmed***

**SHAW, P.J. and PRESTON, J., concur.**

**/jlr**