[Cite as *State v. Benvenuto*, 2018-Ohio-2242.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,               CASE NO. 1-17-39

      v.

JAMES A. BENVENUTO,              O P I N I O N

      DEFENDANT-APPELLANT.

---

Appeal from Allen County Common Pleas Court
Trial Court No. CR 2016 0348

Judgment Affirmed

Date of Decision: June 11, 2018

---

APPEARANCES:

    *Dustin M. Blake* for Appellant

    *Jana E. Emerick* for Appellee

**ZIMMERMAN, J.**

{¶1} Defendant-Appellant, James A. Benvenuto ("Appellant"), brings this appeal from the Allen County Common Pleas Court, convicting him of: fifty-three (53) counts of Trafficking in Marijuana, in violation of R.C. 2925.03(A)(1) & 2925.03(C)(3)(a), all felonies of the fifth (5th) degree; one (1) count of Trafficking in Marijuana, a felony of the third (3rd) degree, in violation of R.C. 2925.03(A)(1) & 2925.03(C)(3)(d); two (2) counts of Possession of Marijuana, in violation of R.C. 2925.11(A) & 2925.11(C)(3)(e), felonies of the second (2nd) degree; one (1) count of Possession of Hashish, in violation of R.C. 2925.11(A) & 2925.11(C)(7)(d), a felony of the third (3rd) degree; and one (1) count of Engaging in a Pattern of Corrupt Activity, in violation of R.C. 2923.32(A)(1) & R.C. 2923.32(B)(1), a felony of the first (1st) degree.

{¶2} On appeal, Appellant asserts: 1) that the trial court erred in overruling his motion to suppress the evidence seized without a warrant; 2) that the trial court erred in overruling his motion to suppress the evidence seized through a defective warrant; 3) that his Engaging in a Pattern of Corrupt Activity conviction was not supported by sufficient evidence; 4) that the trial court erred when it failed to merge two separate marijuana possession charges (as well as a trafficking charge) into a single offense; and 5) that the trial court erred by sentencing Appellant to a 34-year prison sentence. For the reasons that follow, we affirm the ruling of the trial court.

*Factual Background*

**{¶3}** On August 9, 2016, investigators from the West Central Ohio Crime Task Force ("WCOCTF") were conducting surveillance on Vincent McKercher ("McKercher") in Allen County. (05/05/2017 Tr. at 8). McKercher had a history of trafficking in marijuana. (*Id.* at 9). Investigators followed McKercher (in his vehicle) from a barbershop in Lima, Ohio to a warehouse located at 519 N. Jackson St. in Lima. (*Id.* at 11). Shortly thereafter, investigators observed McKercher's vehicle leaving the warehouse, with a second vehicle leaving the warehouse directly behind it. (*Id.* at 15). The vehicles headed in different directions, so investigators split up in order to follow both vehicles. (*Id.*). Shortly thereafter, and with the assistance from local law enforcement, McKercher's vehicle was stopped for a window tint violation. (*Id.* at 99). After the stop and subsequent search of McKercher's vehicle, officers located a duffle bag in the trunk that contained marijuana. (*Id.* at 100). During the search of McKercher's vehicle, investigators observed an unknown male in the vicinity watching the traffic stop while talking on his cell phone. (*Id.* at 21-22).

**{¶4}** While McKercher's traffic stop and search was underway, investigators and local law enforcement followed the second vehicle, a Chrysler 200, which left the warehouse behind McKercher's vehicle. (*Id.* at 18-19). Patrolman Amy Glanemann ("Officer Glanemann") of the Lima Police Department stopped the

driver of the Chrysler 200 for failing to properly signal the intention to turn 100 feet prior to an intersection. (*Id.* at 66). The Appellant was identified as the driver of the Chrysler 200. (*Id.* at 67).

{¶5} While other law enforcement officers were running Appellant's license information through LEADS, Officer Glanemann had her K-9 partner, Diego, conduct a free air sniff of Appellant's vehicle. (*Id.* at 69). Officer Glanemann determined that Diego alerted to the presence of drugs at Appellant's vehicle side door. (*Id.*). As a result of the free air sniff, Appellant was removed from the vehicle. (*Id.*). During the pat-down of Appellant, officers discovered $4,600 in cash and a container containing various pills in his pants pockets. (*Id.* at 70). Officers learned from an on-line application that Appellant's pills were Hydrocodone, a Schedule II narcotic. (*Id.*). The search of Appellant's vehicle also revealed the presence of packaging containing marijuana residue (marijuana "shake") in the passenger compartment. (*Id.* at 71). Investigators also discovered that Appellant's vehicle was a rental vehicle. (*Id.* at 52). Thus, investigators seized the vehicle. (*Id.*).

{¶6} After seizing Appellant's vehicle and while law enforcement officers were driving it to the Allen County Sheriff's Department for a more thorough search, Appellant's cell phone, which was left in the vehicle, rang multiple times. (*Id.* at 22). Based on the collective behaviors of McKercher and Appellant, the large quantity of marijuana found in McKercher's vehicle, the suspicious individual in

the area watching McKercher's traffic stop, and Appellant's cell phone ringing in the rental vehicle, law enforcement officials decided to obtain a warrant to search the warehouse located at 519 N. Jackson St. for drugs. (*Id.* at 20-21).

**{¶7}** Investigators, with the assistance of local law enforcement, drove to the warehouse to set up a perimeter around it until the warrant was secured. (*Id.* at 21). However, while at the warehouse, law enforcement officials noticed that the warehouse garage door was open and an unidentified white vehicle was in the warehouse. (*Id.* at 22). Fearing that evidence in the warehouse was at risk of being destroyed or removed, Investigator Trent Kunkleman ("Investigator Kunkleman") of the WCOCTF, knocked on the door of the building attached to the warehouse. (*Id.* at 24). When a woman, later identified as Beth McElfresh ("McElfresh"), answered and opened the door, Investigator Kunkleman noted the smell of raw marijuana emanating from the residence. (*Id.*). Investigator Kunkleman asked McElfresh if the residence was connected to the warehouse and McElfresh indicated that it was. (*Id.*). Thereupon, Investigator Kunkleman, along with other law enforcement officials, entered the residence to conduct a protective sweep of the area to ensure that potential evidence was not destroyed.[1] (*Id.* at 25). Officers then conducted a protective sweep of the residence and the warehouse, noting that marijuana was discovered in plain view in the residential portion of the property.

---

[1] The search was not conducted with the consent of Beth McElfresh or anyone else on the property.

(*Id.* at 27).  Further, Investigator Kunkleman testified that during the protective sweep of the area, law enforcement did not open any drawers or check any enclosed spaces unless the space was large enough to hide a human being.  (*Id.*).

**{¶8}** Once the initial sweep was finalized, law enforcement officers exited the premises and completed the search warrant process for 519 N. Jackson St.  (*Id.* at 28).  Upon submission of the search warrant, the reviewing judge determined probable cause existed and issued the search warrant.  (*Id.* at 29).  Investigators then returned to the warehouse with the warrant and searched the premises.  (*Id.*).  The search resulted in the seizure of a number of drug-related items.  (*Id.*).  Investigators also discovered a video tape security system that was utilized in the warehouse portion of 519 N. Jackson St.  (*Id.* at 29-30).  Law enforcement subsequently discovered that the system had recorded their protective sweep of the residence, as well as the numerous (purported) transactions involving the sale of marijuana within the warehouse.  (*Id.* at 30).

*Procedural History*

**{¶9}** On October 14, 2016, Appellant was indicted on fifty-three (53) counts of Trafficking in Marijuana, in violation of R.C. 2925.03(A)(1) & R.C. 2925.03(C)(3)(a), all felonies of the fifth (5th) degree; one (1) count of Trafficking in Marijuana with a specification for forfeiture of money in a drug case pursuant to R.C. 2941.1417(A) and a specification for forfeiture of property pursuant to R.C.

2941.1417(A), in violation of R.C. 2925.03(A)(1) & R.C. 2925.03(C)(3)(d), a felony of the third (3rd) degree; two (2) counts of Possession of Marijuana with a specification for forfeiture of money in a drug case pursuant to R.C. 2941.1417(A) and a specification for forfeiture of property pursuant to R.C. 2941.1417(A), in violation of R.C. 2925.11(A) & R.C. 2925.11(C)(3)(e), felonies of the second (2nd) degree; one (1) count of Possession of Hashish with a specification for forfeiture of money in a drug case pursuant to R.C. 2941.1417(A) and a specification for forfeiture of property pursuant to R.C. 2941.1417(A), in violation of R.C. 2925.11(A) & 2925.11(C)(7)(d), a felony of the third (3rd) degree; and one (1) count of Engaging in a Pattern of Corrupt Activity ("RICO") with a specification for forfeiture of money in a drug case pursuant to R.C. 2941.1417(A) and a specification for forfeiture of property pursuant to R.C. 2941.1417(A), in violation of R.C. 2923.32(A)(1) & 2923.32(B)(1), a felony of the first (1st) degree. (Doc. No. 3). Appellant entered not guilty pleas to all charges.

{¶10} On December 19, 2016, Appellant, through counsel, filed a motion to suppress in the trial court. (Doc. No. 21). Appellant supplemented his motion to suppress with a supporting memorandum on March 14, 2017. (Doc. No. 39).

{¶11} On May 5, 2017, the trial court conducted a hearing on Appellant's motion to suppress. (05/05/2017 Tr.). Three witnesses testified for the State. (*Id.*).

Thereafter, the trial court filed its judgment entry denying Appellant's motion on May 10, 2017.  (Doc. No. 59).

**{¶12}** On July 6, 2017, Appellant entered a negotiated plea of no contest to all charges and specifications and was found guilty of all counts contained in the indictment.  (Doc. Nos. 67 & 68).

**{¶13}** On August 21, 2017, Appellant's sentencing hearing was held.  (Doc. No. 75).  During the sentencing hearing, the State and counsel for Appellant advised the trial court that merger was not an issue as to sentencing.  (08/21/2017 Tr. at 18).  Thereafter, the trial court sentenced Appellant to the following terms of imprisonment: twelve (12) months (each) for Counts 1-53; thirty-six (36) months for Count 54; thirty-six (36) months (each) for Counts 55 & 56; thirty-six (36) months for Count 57; and eleven (11) years in prison for the Engaging in a Pattern of Corrupt Activity charge in Count 58.  (Doc. No. 75).  The trial court ordered that the prison terms imposed in Counts 1-5 be served concurrently to each other; the prison terms in Counts 6-10 be served concurrently to each other; the prison terms in Counts 11-15 be served concurrently to each other; the prison terms in Counts 16-20 be served concurrently to each other; the prison terms in Counts 21-25 be served concurrently to each other; the prison terms in Counts 26-30 be served concurrently to each other; the prison terms in Counts 31-35 be served concurrently to each other; the prison terms in Counts 36-40 be served concurrently to each other;

the prison terms in Counts 41-45 be served concurrently to each other; the prison terms in Counts 46-50 be served concurrently to each other; and the prison terms in Counts 51-53 be served concurrently to each other, all pursuant to R.C. 2929.14(E). (*Id.*). However, the trial court ordered that each group of concurrent sentences would run *consecutive* to each other, and *consecutive* to the prison terms imposed in Counts 54, 55, 56, 57, and 58. (*Id.*). In sum, the aggregate sentence of the trial court was thirty-four (34) years in prison. (*Id.*).

{¶14} In regards to the specifications for forfeiture of money in a drug case and forfeiture of property set forth in Counts 54, 55, 56, 57, and 58, the trial court ordered that $68,467.00 in U.S. currency along with Appellant's interest in the real property located at 519 N. Jackson St. in Lima, Ohio be forfeited. (*Id.*).

{¶15} From this judgment entry Appellant appeals, presenting the following assignments of error for our review:

## ASSIGNMENT OF ERROR NO. I

**THE TRIAL COURT ERRED IN OVERRULING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE SEIZED IN VIOLATION OF THE DEFENDANT'S CONSTITUTIONAL RIGHTS WHEN THE EVIDENCE DEMONSTRATED THAT OFFICERS WENT INSIDE A CONSTITUTIONALLY PROTECTED ABODE WITHOUT OBTAINING A WARRANT, WHICH WAS PER SE UNREASONABLE AND WAS NOT PERMITTED UNDER ANY LEGALLY RECOGNIZED EXCEPTION.**

## ASSIGNMENT OF ERROR NO. II

**THE TRIAL COURT ERRED IN OVERRULING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE SEIZED IN VIOLATION OF THE DEFENDANT'S CONSTITUTIONAL RIGHTS WHEN THE EVIDENCE DEMONSTRATED THE WARRANT WAS DEFECTIVE.**

## ASSIGNMENT OF ERROR NO. III

**BENVENUTO'S RICO CONVICTION WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE IN THE RECORD WHERE THE STATE REPRESENTED THAT THE PREDICATE OFFENSES STEMMED FROM THE SAME DATE, TIME, AND LOCATION CONSTITUTING A "SINGLE EVENT" AND NOT A "PATTERN OF CORRUPT ACTIVITY."**

## ASSIGNMENT OF ERROR NO. IV

**THE STATE ERRED WHEN IT CREATED TWO SEPARATE MARIJUANA POSSESSION CHARGES OUT OF THE SIMULTANEOUS POSSESSION OF THE SAME DRUG FOUND ON THE SAME DATE, TIME, AND LOCATION INSTEAD OF AGGREGATING THE AMOUNTS INTO A SINGLE OFFENSE. THE TRIAL COURT CONSEQUENTLY ERRED WHEN IT FAILED TO MERGE THE TWO CHARGES AS WELL AS [SIC] TRAFFICKING CHARGE INTO A SINGLE OFFENSE AND ENTERED A CONSECUTIVE PRISON SENTENCE ON THE CHARGES.**

## ASSIGNMENT OF ERROR NO. V

**THE TRIAL COURT ERRED BY SENTENCING BENVENUTO TO A 34-YEAR PRISON SENTENCE STEMMING FROM MARIJUANA CHARGES CONTRARY TO THE SENTENCING STATUTES AND IN VIOLATION OF THE EIGHTH AMENDMENT PROHIBITION AGAINST CRUEL AND UNUSUAL PUNISHMENT.**

{¶16} Due to the nature of Appellant's assignments of error, we elect to address the first and second assignments of error together, which are interrelated.

*Appellant's First and Second Assignments of Error*

{¶17} Appellant argues in his first assignment of error that the trial court erred in overruling his motion to suppress because the officers: did not have probable cause to enter his home; did not have an objectively reasonable basis for concluding that a loss or destruction of evidence was imminent; and because officers illegally continued a warrantless search of his property after the investigation into exigent circumstances had concluded.

{¶18} In his second assignment of error, Appellant argues that illegally obtained information was included in the affidavit to support a finding of probable cause, and that without such information the issued search warrant lacked probable cause. For the following reasons, we disagree.

*Standard of Review*

{¶19} "A review of the denial of a motion to suppress involves mixed questions of law and fact." *State v. Lewis,* 3rd Dist. Auglaize No. 2-16-13, 2017-Ohio-996, 86 N.E.3d 974, ¶ 8 citing *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. At a suppression hearing, the trial court assumes the role of trier of fact, and as such, is in the best position to evaluate the evidence and the credibility of witnesses. *Id.* "An appellate court must accept the trial court's

findings of facts if they are supported by competent, credible evidence." *Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*

*Analysis*

**{¶20}** Appellant argues that the trial court should have granted his motion to suppress because officers impermissibly conducted a warrantless sweep of the real property located at 519 North Jackson St in Lima, Ohio. The parties agree that officers conducted a warrantless search of Appellant's property without the consent of the Appellant or any individual located inside the premises.

**{¶21}** "The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution protect individuals against unreasonable searches and seizures by the government." *State v. Seaburn,* 3rd Dist. Seneca No. 13-17-12, 2017-Ohio-711, ¶ 11. "It is a 'basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable.'" *State v. Johnson,* 187 Ohio App.3d 322, 2010-Ohio-1790, 931 N.E.2d 1162, ¶ 13 quoting *Groh v. Ramirez,* 540 U.S. 551, 559, 124 S.Ct. 1284 (2004). This presumption may be overcome in certain circumstances because "the ultimate touchstone of the Fourth Amendment is 'reasonableness.'" *Kentucky v.*

*King,* 563 U.S. 452, 459, 131 S.Ct. 1849 (2011) quoting *Brigham City, Utah v. Stuart,* 547 U.S. 398, 403, 126 S.Ct. 1943 (2006).

**{¶22}** However, "[i]t is well established that 'exigent circumstances,' including the need to prevent the destruction of evidence, permit police officers to conduct an otherwise permissible search without first obtaining a warrant." *Id.* at 455. This exception recognizes situations where the exigencies of [a] situation make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment.  In order to satisfy the exigent circumstances exception, law enforcement officers need probable cause plus exigent circumstances.  *State v. Harris,* 8th Dist. Cuyahoga No. 84591, 2005-Ohio-399, ¶ 32.  Lastly, "[l]aw enforcement agents bear a heavy burden when attempting to demonstrate exigent circumstances that might justify a warrantless entry." *Id.*

**{¶23}** In the case *sub judice*, the trial court determined the following constituted exigent circumstances, based upon the evidence presented at the suppression hearing: 1) law enforcement officers' observation of McKercher driving his vehicle in front of a warehouse on August 9, 2016, and shortly thereafter driving out of a warehouse being followed by a second vehicle; 2) McKercher's past involvement in drug-related activities; 3) McKercher's vehicle, and the vehicle following him, drove in opposite directions upon leaving the warehouse; 4) officers finding a duffel bag containing several marijuana-filled heat sealed bags in the trunk

of McKercher's vehicle after McKercher's traffic stop and subsequent search; 5) Investigator Brotherwood's observation of an unknown male watching McKercher's traffic stop while on the phone; 6) Appellant's elusive driving of the Chrysler 200 (the second vehicle); 7) Appellant's failure to properly signal his intention to turn; 8) Patrolman Glanemann's observation that Appellant was visibly nervous; 9) Patrolman Glanemann's testimony that she could smell the odor of marijuana on Appellant or in his car; 10) the K-9's indication of the presence of narcotics in Appellant's vehicle; 11) Patrolman Glanemann finding a container of several different pills in Appellant's pocket during the pat down search; 12) law enforcement officers locating a small amount of marijuana residue in a heat-sealed bag; 13) the bag in Appellant's vehicle being similar to the heat sealed bags located in McKercher's vehicle; 14) Appellant's phone ringing multiple times while law enforcement officials drove his vehicle back to the sheriff's department; 15) officers' observation that upon returning to 519 N. Jackson St., an unknown white vehicle was driving around the warehouse; 16) upon Beth McElfresh opening the door to the residential property, the smell of marijuana coming from the residence; 17) Beth McElfresh indicating that the residential portion of the property was connected to the warehouse portion of the property; and 18) Investigator Kunkleman's testimony that he believed a protective sweep was necessary to prevent the destruction of evidence. (Doc. No. 59).

{¶24} Furthermore, upon law enforcement officers entrance into the residence to conduct a protective sweep, Investigator Kunkleman testified that there was evidence of illegal drug activity, including "dabs" or extractions of THC in plain view. (*Id.*). And during the sweep, the trial court found that law enforcement officers did not open any drawers or cupboards because they were only searching for individuals who could possibly destroy evidence. (*Id.*).

{¶25} In our review of the record, including the transcript of the suppression hearing, we find competent and credible evidence of exigent circumstances to overcome the presumption of a warrantless entry into Appellant's residence and warehouse. Specifically, we find the testimony of Investigator Kunkleman to be compelling that, based upon his training and experience, he had reason to believe that evidence (i.e. marijuana and drug-related paraphernalia) would be destroyed or transported by individuals located at the property to justify the protective sweep.

{¶26} Thus, we find that the trial court did not err in denying Appellant's motion to suppress, as law enforcement entered the premises under the exigent circumstances exception to the warrant requirement. Accordingly, the evidence obtained by law enforcement officers during the protective sweep of Appellant's property was not unconstitutionally or illegally obtained, and we overrule Appellant's first and second assignments of error.

Case No. 1-17-39

*Appellant's Third Assignment of Error*

**{¶27}** In his third assignment of error, Appellant argues that his RICO conviction (Count 58) following his plea of no contest was not supported by sufficient evidence. Specifically, Appellant asserts that because the State represented to the trial court that the predicate offense stemmed from events that occurred on the same date and at the same time, such failed to establish a pattern of corrupt activity.[2] For the reasons that follow, we disagree.

*Standard of Review*

**{¶28}** A "plea of no contest is not an admission of defendant's guilt, but is an admission of the truth of the facts alleged in the indictment * * *." Crim.R. 11(B)(2). In felony cases, following a plea of "no contest," the "prosecution does not have the obligation to present evidence proving the defendant guilty beyond a reasonable doubt." *State v. Thorpe,* 9 Ohio App.3d 1, 2, 457 N.E.2d 912 (8th Dist.1983). Rather, Crim.R. 11 permits a trial court to enter judgment only based upon the facts as alleged in the indictment. *State v. Burke,* 3rd Dist. Union No. 14-13-09, 2013-Ohio-4318, ¶ 6. "'Where an indictment * * * contains sufficient allegations to state a felony offense and the defendant pleads no contest, the court must find the defendant guilty of the charged offense.'" *Id.* quoting *State v. Bird,* 81 Ohio St.3d 582, 1998-Ohio-606, 692 N.E.2d 1013.

---

[2] We note that Appellant did not challenge the sufficiency of the indictment in his merit brief.

*Analysis*

**{¶29}** The trial court had authority under the criminal rules to determine whether the facts alleged in the indictment were sufficient to support a conviction on the offense charged. Here, the indictment, as it related to Appellant's RICO charge, stated, in its relevant part, as follows:

> Count 58: Engaging in a Pattern of Corrupt Activity – F1, [in violation of] §2923.32(A)(1), 2923.32(B)(1), *Date of Offense: On or about 1/1/2016 through 8/9/2016.* The grand jurors, * * * further find that the Defendant(s), in the County of Allen, State of Ohio, unlawfully while employed by, or associated with, any enterprise did conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity or the collection of an unlawful debt. * * *.

(Emphasis added.) (Doc. No. 3).

*Engaging in a Pattern of Corrupt Activity (RICO)*

**{¶30}** "[T]he law in Ohio is that 'if a defendant has engaged in two or more acts constituting a predicate offense, he or she is engaging in a pattern of corrupt activity and may be found guilty of a RICO violation.'" *State v. Thomas,* 3rd Dist. Allen Nos. 1-11-25, 1-11-26, 2012-Ohio-5577, ¶ 47.

**{¶31}** Under R.C. 2923.32(A)(1), Appellant's RICO charge requires proof of the following by the State:

> No person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity or the collection of an unlawful debt.

-17-

R.C. 2923.32(A)(1).  R.C. 2923.31(E) defines "[p]attern of corrupt activity" as:

> [T]wo or more incidents of corrupt activity, *whether or not there has been a prior conviction*, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event.

(Emphasis added.)  R.C. 2923.31(E).  R.C. 2923.31 further states, in its pertinent part:

> "Enterprise" includes any individual, sole proprietorship, partnership, limited partnership, corporation, trust, union, government agency, or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity.  "Enterprise" includes illicit as well as licit enterprise.

R.C. 2923.31(C).

{¶32} Appellant asserts that the trial court determined that the only predicate offense establishing a "pattern of corrupt activity" were Counts 54-57, and since all of those counts occurred on the same date, they cannot be "predicate offenses." Stated clearer, Appellant argues that one event does not constitute a continuous course of conduct.  We disagree.

{¶33} Initially, we note that Appellant selectively recites facts contained in the record.  However, Appellant's RICO charge clearly states that his corrupt activity *occurred from 1/1/2016 through 8/9/2016*.  (Doc. No. 3).  Further, at the change of plea hearing, the State advised the trial court as follows:

> **Count Fifty-Eight, the Engaging in a Pattern of Corrupt Activity, the dates alleged there are from January 1st of 2016 through August 9th of 2016.  That specifically is based upon our investigation that revealed starting back in January of 2016 this**

> **defendant, in conjunction with other people, including two currently indicted co-defendants, began what can only be described as a drive-thru marijuana operation at 519 North Jackson here in Lima, Allen County, Ohio. More specifically, this defendant, along with others, was engaged, conducted, and directly participated, as well as indirectly participating, in the affairs of this enterprise whereby they sold, and *repeatedly* sold, marijuana.**

(Emphasis added).  (07/05/2017 Tr. at 27-28).

{¶34} Here, we find that the allegations contained in the indictment established a "pattern of corrupt activity."  These allegations were proven through the State's representations to the trial court at the plea hearing that the Appellant operated a "marijuana drive thru" operation for at least six (6) months.  It is not required that Appellant be convicted of prior incidents of corrupt activity to establish a "pattern of corrupt activity."  And, because the indictment contains sufficient facts to establish a pattern of corrupt activity spanning across multiple dates, the trial court was correct in finding Appellant guilty of the RICO charge set forth in Count 58.

{¶35} Nonetheless, Appellant relies upon *State v. Cohen* in support of his assertion that the statement recited by the prosecutor to the trial court was factually insufficient and therefore, the trial court should have refused to accept the defendant's no contest plea. *See generally, State v. Cohen,* 60 Ohio App.2d 182, 184, 396 N.E.2d 235 (1st Dist.1978) (finding that the "uncontroverted statement of facts recited to the court below not only failed to include, but Absolutely [sic]

negatived [sic] the existence of, an essential element of the offense charged in the indictment.") We find such reliance misplaced. Specifically, this Court in *State v. Mullen* analyzed *Cohen's* holding finding that *Cohen* required that the State's statement to the trial court *absolutely negated* a required element of the offense charge. *State v. Mullen,* 191 Ohio App.3d 788, 2011-Ohio-37, 947 N.E.2d 762, ¶ 19. *See also, State v. Woolridge,* 2nd Dist. Montgomery No. 1808, 2000 WL 1475699, *2 (holding that a trial court may not find a defendant guilty based on his no contest plea if the State's statement of facts *absolutely negates* the existence of an essential element of the offense). Here, the State's recitation of facts as to the Appellant's RICO charge, viewed in its entirety, does not "absolutely negate" any essential element of the charge of Engaging in a Pattern of Corrupt Activity under R.C. 2923.32(A)(1). Thus, we find Appellant's argument without merit.

{¶36} Accordingly, we overrule Appellant's third assignment of error.

### *Appellant's Fourth Assignment of Error*

{¶37} Initially we note that Appellant contends that the *State erred* by charging the Appellant with two separate marijuana possession charges arising from the "simultaneous possession" of the drug. However, as it is the prerogative of the State to charge as it deems just, the trial court's treatment of such charges becomes the issue on appeal. Thus, under Appellant's fourth assignment of error, we

determine the issue before us is whether or not the trial court erred by failing to merge Counts 54, 55, and 56.

{¶38} Directing our attention to the issue of merger, we find that the trial court did not err when it declined to merge Appellant's two counts of possession and his one count of trafficking marijuana into a single offense.

*Standard of Review*

{¶39} "'A defendant bears the burden of proving that the offenses for which he has been convicted and sentenced constitute allied offenses of similar import.'" *State v. Vanausdal,* 3rd Dist. Shelby No. 17-16-06, 2016-Ohio-7735, ¶ 17, quoting *State v. Campbell,* 12th Dist. Butler No. CA2014-06-137, 2015-Ohio-1409, ¶ 18, citing *State v. Luong,* 12th Dist. Butler No. CA2011-06-110, 2012-Ohio-4520, ¶ 46. Additionally, a reviewing court may look to the information contained in the record to make its allied offense determination. *Id.* An appellate court then reviews *de novo* the question of whether offenses are allied offenses of similar import. *State v. Potts,* 2016-Ohio-5555, 69 N.E.3d 1227, ¶ 93 (3rd Dist.), citing *State v. Stall,* 3rd Dist. Crawford No. 3-10-12, 2011-Ohio-5733, ¶ 15, citing *State v. Brown,* 3rd Dist. Allen No. 1-10-31, 2011-Ohio-1461, ¶ 36.

*Analysis*

{¶40} The Double Jeopardy Clause of the Fifth Amendment of the United States Constitution and applied to Ohio citizens through the Fourteenth Amendment

to the United States Constitution provides "that no person shall 'be subject for the same offence to be twice put in jeopardy of life or limb.'" *State v. Ruff,* 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 10 quoting U.S. Constitution, Amendment V. Additionally, "[t]he Double Jeopardy Clause protects against three abuses: (1) 'a second prosecution for the same offense after acquittal,' (2) 'a second prosecution for the same offense after conviction,' and (3) 'multiple punishments for the same offense.'" *Id.,* quoting *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, (1969), *overruled on other grounds, Alabama v. Smith,* 490 U.S. 794, 109 S.Ct. 2201 (1989).

**{¶41}** R.C. 2941.25, the codified version of the double jeopardy clause, provides Ohio's statutory requirements for multiple counts. It provides:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

R.C. 2941.25.

**{¶42}** In 2015, the Ohio Supreme Court set forth the following test regarding allied offenses and merger:

As a practical matter, when determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three questions when the defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered.

*State v. Ruff, Id*.

{¶43} However, we are unable to conduct a merger analysis under *Ruff,* in part because of the limited record before us. Furthermore, Appellant's trial counsel represented to the trial court that merger was not an issue in this case. (8/21/2017 Tr. at 18). Specifically, the following exchange occurred between Appellant's trial counsel and the trial court:

**The Court: Okay. I'll give you the full opportunity to do that. I do want to make sure the record is clear that I did consider the issue of merger. Although convictions were entered when the no contest pleas were given back in July, it's not a final entry until I do the sentencing. So, does the defense want to argue that any of these counts would merge under the case law or 2941.25?**

**Appellant's Trial Counsel: Not that I found, your Honor. It appears to me that each case is a separate and – well, either with the F-3's, or the F-5's are separate buys, I guess, your Honor, and then I think the Prosecutor made it clear on the record today what the F-3 differentiations were.**

(*Id.* at 17-18). In response to Appellant's trial court counsel's statements, the State made the following representation to the trial court:

> **The Court: Does the State want to have anything? I know you mentioned merger already. Is there anything else you want to add?**
>
> **Prosecuting Attorney: Just that, your Honor, in light of the facts as were stated during the no contest plea, as well as the argument that I provided today, it's the State's position that none of these counts merge. * * * But, beyond that, we don't believe any of the counts merge.**

(*Id.* at 18). Finally, the trial court, when imposing Appellant's sentence, ruled that there was no merger on any of the counts. (*Id.* at 32).

{¶44} Here, the limited record on appeal with regards to merger reveals that the Appellant (through counsel) and the State agreed that merger was not an issue, which the trial court accepted. As there was no hearing on the issue of merger based on the representation of the parties, our *de novo* review of the record does not reveal any error in trial court's merger analysis. Accordingly, we find no merit in Appellant's claim that the trial court's failure to merge the offenses resulted in reversible error. Appellant's fourth assignment of error is overruled in its entirety.

### *Appellant's Fifth Assignment of Error*

{¶45} Lastly, Appellant argues that his sentence was contrary to the sentencing statutes and violated his Eighth Amendment rights. Appellant directs this Court to the sentences received by his co-defendants to demonstrate that his thirty-four (34) year prison sentence was grossly disproportionate to, and not

consistent with, sentences received by similar offenders. For the reasons that follow, we disagree.

*Standard of Review*

**{¶46}** R.C. 2953.08(G)(2), entitled "Appeals based on felony sentencing guidelines" provides:

> The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence * * *. The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division 2929.13(B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;
> (b) That the sentence is otherwise contrary to law.

R.C. 2953.08(G)(2). "[A]ppellate courts must adhere to the plain language of R.C. 2953.08(G)(2)." *State v. Marcum,* 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 7. An appellate court may only modify or vacate a sentence if it finds by clear and convincing evidence that the record does not support the sentencing court's decision. *Id.* at ¶ 23. Clear and convincing evidence is that "'which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *State v. Silknitter,* 3rd Dist. Union No. 14-16-07, 2017-

Ohio-327, ¶ 7 quoting, *Marcum, supra,* quoting *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. Clear and convincing evidence is that measure or degree of proof which is more than a mere "preponderance of the evidence," but does not require the certainty of "beyond a reasonable doubt." *Marcum,* at ¶ 22 quoting *Ledford.*

*Analysis*

**{¶47}** Initially, we note that Appellant does not argue that the trial court failed to make the appropriate sentencing findings. Instead, Appellant, in part, disagrees with the trial court's seriousness findings (under R.C. 2929.12), as well as the trial court's imposition of a thirty-four (34) year sentence for "what amounts to a series of non-violent trafficking offenses for marijuana." Furthermore, Appellant contends that the trial court essentially sentenced him to a "life sentence" for trafficking in marijuana due to his age (53 years old).

**{¶48}** "The Eighth Amendment to the United States Constitution provides: 'Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.'" *State v. Simpson,* 11th Dist. Lake No. 2016-L-014, 2016-Ohio-7746, ¶ 26. This Amendment is applied to the states through the Due Process Clause of the Fourteenth Amendment. *Id.*

**{¶49}** "As a general rule, a sentence that falls within the terms of a valid statute cannot amount to a cruel and unusual punishment." *Id.* quoting *McDougle*

*v. Maxwell*, 1 Ohio St.2d 68, 69, 203 N.E.2d 334 (1964). "Instances of cruel and unusual punishment are limited to those that would, under the circumstances, shock any reasonable person and shock the sense of justice of the community." *State v. Weitbrecht*, 86 Ohio St.3d 368, 370 (1999) (citations omitted). In evaluating whether a punishment is cruel and unusual, the U.S. Supreme Court instructs that "a criminal sentence must be proportionate to the crime for which the defendant has been convicted." *Solem v. Helm*, 463 U.S. 277, 290 (1983).

{¶50} When reviewing the record before us, the trial court made the following sentencing findings on the record:

> **Trial Court: But, with respect to all the counts, I'll review the factors for sentencing purposes under 2929.12. I'll find, again, that the offenses as a more serious fact, well, the offenses were committed as part of an organized criminal activity. Whether there were other individuals involved or not, I don't know. But, it certainly was an organized criminal activity in the way it was set up and how the activity occurred over on Pine (sic) Street.**
>
> **It could be argued either way, I guess, on whether the defendant could expect that there would be physical harm caused to persons in committing these offenses. But, I'll find that I don't have any evidence that any persons were harmed. So, that's a less serious fact.**
>
> **Recidivism factors weigh heavily in the Court's consideration. The defendant does have a previous record, as has been outlined here in the Court and it's in the P.S.I. I'm going to find that he hasn't responded favorably to sanctions previously imposed. He hasn't been rehabilitated to a satisfactory degree. Based upon the P.S.I and what's been presented here today the defendant demonstrates a pattern of substance abuse that's related to the offense.**

**I'll make a finding that the defendant doesn't show any genuine remorse based upon everything that's been presented here today.**

**Again, there are a lot of felonies of the fifth degree in this case, but the most serious offenses, obviously, are not felonies of the fourth or fifth degree.  So, 2929.13(B)(1)(a) does not require community control.  The defendant has the prior felony record, anyways, and so it wouldn't require community control, anyways.**

**With consideration of the three counts that hold a presumption, I'm going to find that the presumption is not overcome with respect to those three counts.   In weighing especially the recidivism factors showing recidivism to be more likely – oh, and I didn't mention the ORAS score.  As was pointed out, it was a twenty-six, which indicates a high risk of reoffending, for that's worth.   But, I'll find that a community control sanction or a combination doesn't adequately punish the defendant or protect the public from future crime.    Weighing the factors showing recidivism I find that they are not outweighed by any factors showing a less likelihood at recidivism.**

**I would also find the factor that I did find with regard to no physical harm to persons, well, that doesn't outweigh the more serious of this being part of an organized criminal activity.**

**So, I find that community control would be demeaning to the seriousness of the offenses.**

**So, with those findings made the Court is going to find that a prison sentence is consistent with the purposes and principles of sentencing.   The defendant is not, at this time, amenable to community control.   I find that community control sanctions would be demeaning to the seriousness of the conduct and prison does not place an unnecessary burden on State governmental resources.**

(8/21/2017 Tr. at 33-34).

**{¶51}** We find that the record demonstrates that the trial court made the seriousness findings pursuant to R.C. 2929.12(B)&(C). Specifically, the trial court found that Appellant's conduct was more serious because he committed the offense for hire or as a part of an organized criminal activity. (Doc. No. 75). But, the trial court also found that Appellant's conduct was less serious because he did not cause or expect to cause physical harm to any person or property. (*Id.*). While Appellant asserts that the trial court should have credited him with one additional "less serious" factor (under R.C. 2929.12(C)), we are not persuaded by Appellant's argument. "'It is self-evident that the trial court is in the best position to make the fact-intensive determinations required by the sentencing statutes.'" *State v. McLemore,* 136 Ohio App.3d 550, 554, 2000-Ohio-1619, 737 N.E.2d 125 *quoting State v. Martin,* 136 Ohio App.3d 355, 361, 1999-Ohio-814, 736 N.E.2d 907. The record before us reveals that the trial court was aware of Appellant's "less serious" factors (i.e. record of employment), but was unpersuaded in light of the existing more serious ones. As such, since the trial court was in the best position to make the sentencing determinations, we need not re-analyze the sentencing factors further.

**{¶52}** Next, Appellant argues that his thirty-four (34) year prison sentence for being a "non-violent drug dealer" "shocks the conscious," and directs us to

review the sentences received by his co-defendants and other drug dealers[3] to demonstrate that his sentence is disproportionate to his conduct. However, the goal of felony sentencing pursuant to R.C. 2929.11(B) is to achieve 'consistency' not 'uniformity.' *Simpson,* 11th Dist. Lake No. 2016-L-014, 2016-Ohio-7746, ¶ 28. As the court in *Simpson* noted, "'[a] consistent sentence is not derived from a case-by-case comparison.'" *Id. quoting State v. Swiderski*, 11th Dist. Lake No.2004–L–112, 2005–Ohio–6705, ¶ 58. "To the contrary, it is well established that consistency in sentencing is accomplished by the trial court's application of the statutory sentencing guidelines to each individual case." *Id.* "Thus, in order to show a sentence is inconsistent with sentences imposed on other offenders, a defendant [Appellant] must show the trial court failed to properly consider the statutory purposes and factors of felony sentencing." *Id*.

**{¶53}** Here, the trial court's sentence was within the statutory range and the aggregate term was far less than the maximum sentence that could have been imposed. Moreover, the record reveals that the trial court properly considered the statutory purposes and factors of felony sentencing. (*See,* Doc. No. 75). Interestingly, Appellant concedes that it was his behavior (i.e. setting up a video recording system that documented his repeated drug transactions) that resulted in the bulk of his charges. (*See,* Br. of Appellant at 28).

---

[3] Appellant refers to drug dealers prison sentences, in general.

**{¶54}** While Appellant directs this Court to *State v. Gwynne* to support his contention that his prison sentence "shocks the conscious," we find several factual distinctions that make *Gwynne* inapplicable. *State v. Gwynne,* 5th Dist. Delaware No. 16 CAA 12 0056, 2017-Ohio-7570. Unlike the Appellant in *Gwynne,* Appellant in the case *sub judice* was not a first-time felon and does not appear to take responsibility for actions.[4] *Id.* at ¶¶ 28, 30. Furthermore, Appellant received thirty-four years in prison for convictions on fifty-eight (58) felony counts, while the Appellant in *Gwynne* received sixty-five (65) years in prison for convictions on thirty-one (31) felony counts and fifteen (15) misdemeanor counts. *Id.* at ¶¶ 28-29. Thus, to us, *Gwynne* is distinguishable.

**{¶55}** Accordingly, we find that the trial court did not err in the imposition of Appellant's prison sentence and did not fail to consider the statutory factors required when imposing a prison sentence. We overrule Appellant's fifth assignment of error.

---

[4] Notably, Appellant continues to blame losing his biggest client as the catalyst for his behavior. (*See,* Br. of Appellant at 27).

## *Conclusion*

**{¶56}** Having found no error prejudicial to Appellant herein in the particulars assigned and argued, we overrule all of Appellant's assignments of error. Accordingly, the judgment of the Allen County Common Pleas Court is affirmed.

***Judgment Affirmed***

**WILLAMOWSKI, P.J. and SHAW, J., concur.**

**/jlr**